UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------X

KATHIE LAULETTE,

                      Plaintiff,

      -against -

VITUSA PRODUCTS, INC.

                    Defendant.

-------------------------------------------------------------------X

Civil Action No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kathie Laulette ("Plaintiff" or "Ms. Laulette"), by and through her attorneys, Nesenoff & Miltenberg, LLP, whose offices are located at 363 Seventh Avenue, 5th Floor, New York, New York 10001, alleges upon knowledge with respect to herself, and upon knowledge, information and belief as to all other matters, as follows:

## THE NATURE OF THIS ACTION

1. This is a civil action brought on behalf of Plaintiff against Defendant Vitusa Products, Inc. ("Defendant" or "Vitusa") for disability discrimination and unlawful termination in violation of the Americans with Disabilities Act of 1990 (the "ADA") and the New Jersey Law Against Discrimination (the "NJLAD"), together with any and all other causes of action which can be reasonably inferred from the facts as set forth below.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

1

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form a part of the same case or controversy between Plaintiff and Defendant.

4. Venue is proper in this case pursuant to 28 U.S.C. § 1391 because Defendant is located in Union County, New Jersey which is in the District of New Jersey and the events giving rise to Plaintiff's claims occurred in Union County, New Jersey which is in the District of New Jersey.

5. All conditions precedent to filing the instant action have been fulfilled.

   i. On or about April 13, 2020, Plaintiff filed a timely charge and complaint of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the New Jersey Division on Civil Rights.

   ii. The EEOC issued Plaintiff a Notice of Right to Sue dated January 13, 2021. This action was commenced within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

## THE PARTIES

6. Ms. Laulette is a female resident of Monroe Township, New Jersey.

7. At all relevant times, Ms. Laulette was an "employee" of Defendant as that term is defined by the ADA and the NJLAD.

8. Upon information and belief, Vitusa was and still is a corporation involved in the marketing and distribution industries with multiple locations and "sister companies" nationwide

2

and a principal place of business located at 343 Snyder Avenue, Berkley Heights, New Jersey 07922.

9. At all relevant times, Vitusa was Ms. Laulette's "employer" as that term is defined by the ADA and the NJLAD.

**OPERATIVE FACTS**

**Plaintiff's Disability**

10. Since in or around late 2009, Ms. Laulette has suffered from multiple sclerosis, more commonly known simply as "MS".

11. As per the national Multiple Sclerosis Society, MS is a "chronic, often disabling disease that causes damage in the central nervous system (brain and spinal cord)" and can cause severe symptoms such as paralysis. (*See* https://www.nationalmssociety.org/NationalMSSociety/media/MSNationalFiles/Brochures/Brochure-What-Is-MS.pdf, last accessed 01/11/2021).

12. As a symptom of her MS, Ms. Laulette suffered the following symptoms which significantly limited her ability to engage in everyday life and functions: extreme fatigue, extreme dizziness, optic neuritis which caused vision loss, weakness and frequent numbness, tingling in her extremities, and severe muscle and body aches.[1]

13. In addition, the stigma against, and misperceptions of, individuals diagnosed with MS have been highly researched and well-documented.

14. For example, many studies have found that an overwhelming percentage of individuals surveyed believed that MS was a terminable diagnosis that prevents any diagnosed

---

[1] This represents a non-exhaustive list of the symptoms suffered by Ms. Laulette, which continue to affect her to date.

individual from living a normal life and that prevents the afflicted individual from being a valuable employee in the workplace. (*See* https://www.comresglobal.com/wp-content/themes/comres/poll/MS_Society_public_omni_26_March12_data_tables_with_coding.pdf, last accessed 01/11/2021).

15. Based on the foregoing, Ms. Laulette was disabled and/or regarded as having a disability within the meaning of the ADA and the NJLAD.

**Plaintiff Commences Employment with Defendant**

16. Ms. Laulette commenced employment with Vitusa as an Account Manager in or around November of 2010.

17. From the beginning of her employment, Vitusa was aware of Ms. Laulette's diagnoses and, therefore, knew that Plaintiff was a disabled employee.

18. Over the course of her tenure, Plaintiff was supervised by two individuals, Vitusa's Chief Operating Officer, Anthony Grande ("COO Anthony") and Vitusa's President, David Grande ("President David").

19. Over the course of her tenure with Vitusa, Ms. Laulette proved herself a capable, dedicated, and dependable employee.

20. Indeed, despite her disability, Ms. Laulette continued to be able to perform her job responsibilities and often pushed herself through the pain of her MS to ensure all of her work was completed and her work performance did not suffer.

21. Ms. Laulette proved that she was able to perform the essential functions of her role despite her diagnosis.

**Plaintiff Is Passed Up For Promotion on the Basis of her Disability**

22. Approximately a year to a year and a half into her employment with Vitusa, Plaintiff learned of and applied for a new, promoted role.

23. Plaintiff was confident that she would be a good fit for the role and was anxious to find out Vitusa's decision.

24. However, not long after she submitted her application, Ms. Laulette began to hear rumors and gossip around the office that she was not going to get the promotion specifically because of her disability.

25. Distraught at the rumors she was hearing, Ms. Laulette spoke with COO Anthony about the position and her application.

26. At such time, COO Anthony confirmed that Ms. Laulette would not be chosen for the promotion and admitted that Ms. Laulette's disability played a role in Defendant's decision not to promote her.

27. Ms. Laulette was appalled and disheartened, but told COO Anthony that although she will let it go this time, if Defendant continued to treat her differently because of her disability, she was not afraid to fight for fair treatment.

**Plaintiff Notifies Defendant of Her Need for a Medical Leave of Absence**

28. In or around February of 2020, Ms. Laulette's doctor placed her on a mandatory medical leave.

29. At the time, Ms. Laulette's doctor approved her for an approximately 60-day leave of absence.

30. Ms. Laulette informed Vitusa of her diagnosis and required medical leave of absence.

31. In addition, Ms. Laulette's doctor sent COO Anthony a note from his office advising that Ms. Laulette would be on leave from February 18, 2020 until April 20, 2020.

**Defendant Terminates Plaintiff's Employment Based
Entirely on Her Disability and Disability Related Leave**

32. Appallingly, shortly after Vitusa learned of Ms. Laulette's need for medical leave, Vitusa terminated Ms. Laulette's employment.

33. Upon information and belief, the basis for Ms. Laulette's untimely termination of employment was her disability and medically required disability leave.

34. Indeed, the termination letter Vitusa provided to Ms. Laulette confirmed as much.

35. Specifically, on or about February 20, 2020, Vitusa sent Ms. Laulette a formal letter terminating her employment. The letter stated, in relevant part:

> Kathie,
>
> First and foremost, I hope that this finds you feeling better and that the rest will help you greatly. We were really surprised by this situation and sudden request for medical leave.
>
> An open-ended request such as this one is far beyond what [Vitusa] can reasonably afford to offer. According to your doctor, the 62-day period requested is the minimum period of time you would be out of work, after which you will be re-evaluated for possible return at either that time or some later date. The uncertainty coupled with the demands of the customer service department and the people there would cause an undue burden on the company and is not something [Vitusa] can rationally undergo for such a lengthy period.
>
> In light of our continued growth and the varied market dynamics affecting most of our products, we know the demands on customer service will remain strong, if not increase over time. The present

> volume is such that we very much need someone available in the position, as you surely realize. We have little choice but to bring someone new into this position.
>
> …
>
> Please keep us updated as to your progress. Once you are able to return to work, you can check with us to see if we have any available positions. If we have one and you choose such, we will need to have a note from your doctor stating any limitations or accommodations that your doctor feels you would need for review. We can together make the appropriate decision at the time.
>
> Your termination is effective as of the date of this letter.

36. Accordingly, *as per Vitusa's own representations and statements*, Vitusa terminated Ms. Laulette's employment because she asked to take medical leave in light of her diagnosis of MS.

37. In addition, again, *as per Vitusa's own representations and statements*, Vitusa refused to hold Ms. Laulette's position open for her to return to after her medical leave had concluded, and advised that she would be considered to come back to employment with Vitusa <u>only</u> <u>after</u> reviewing what, if any, disability accommodations or limitations she would have.

38. Shocked and scared by Vitusa's sudden decision to terminate her employment, Ms. Laulette spoke to COO Anthony and President David on or about February 24, 2020.

39. During the phone call, President David appallingly seemed to challenge Ms. Laulette's disability by claiming that – to his not medically trained eyes – Plaintiff did not look sick in the days before Vitusa learned of her need for medical leave.

40. President David, apparently not convinced enough that Ms. Laulette was sick, told Ms. Laulette to get a second opinion.

41. Ms. Laulette tried to plead her case and explain that although she may not outwardly appear sick to her supervisors, she was significantly ill and disabled in light of her diagnosis.

42. Vitusa's representatives would not listen.

43. COO Anthony then tried to excuse Ms. Laulette's dismissal from employment by explaining that her absence would result in short staffing at Vitusa's facility.

44. However, at no point did Vitusa discuss, or upon information and belief consider, interim measures to accommodate Ms. Laulette's disability leave (such as hiring a temporary employee).

45. Moreover, such excuse was nothing more than a red herring as Ms. Laulette reminded COO Anthony that other employees had taken extended leaves in the past and that the department was accustomed to working with less than the current number of employees without issue.

46. In response, President David accused Ms. Laulette of leaving her co-workers stranded and insisted that, because of her need for medical leave, Ms. Laulette's employment was terminated.

47. Notably, following her termination of employment, Plaintiff never became aware of any efforts by Vitusa to fill her position and, upon information and belief, Ms. Laulette's position has remained vacant since her termination of employment.

## COUNT ONE
### *(DISABILITY DISCRIMINATION – UNLAWFUL TERMINATION NEW JERSEY LAW AGAINST DISCRIMINATION)*

48. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth

herein.

49. At all times relevant, Plaintiff was a person with a disability and/or was regarded as having a disability as defined by the NJLAD and therefore a member of a protected class.

50. Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held at Defendant.

51. As set forth in detail above and herein, Defendant subjected Plaintiff to discrimination and an unlawful termination on the basis of her disability and need for medical leave.

52. By reason of Defendant's violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

53. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

54. Accordingly, Defendant discriminated against Plaintiff on the basis of her disability in violation of her statutory rights as guaranteed by the NJLAD.

55. Wherefore, Plaintiff demands judgment against Defendant as follows:

    a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned New Jersey State laws;

    b. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

    c. An order restraining Defendant from any retaliation against

Plaintiff and/or any witness and/or potential witness for participation in any form in this litigation;

    d.    All compensatory damages that Plaintiff has sustained as a result of the Defendant's unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that she would have received but for the Defendant's conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

    e.    Punitive damages where available by law;

    f.    Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

    g.    Pre-judgment and post-judgment interest, as provided by law; and

    h.    Any other and further relief as this Court finds just, necessary and proper.

## COUNT TWO
### (DISABILITY DISCRIMINATION – UNLAWFUL TERMINATION
### AMERICANS WITH DISABILITIES ACT)

56.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

57.    At all times relevant, Plaintiff was a person with a disability and/or was regarded as having a disability as defined by the ADA and therefore a member of a protected class.

58. Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held at Defendant.

59. As set forth in detail above and herein, Defendant subjected Plaintiff to discrimination and an unlawful termination on the basis of her disability and need for medical leave.

60. By reason of Defendant's violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

61. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

62. Accordingly, Defendant discriminated against Plaintiff on the basis of her disability in violation of her statutory rights as guaranteed by the ADA.

63. Wherefore, Plaintiff demands judgment against Defendant as follows:

    a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned Federal laws;

    b. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

    c. An order restraining Defendant from any retaliation against Plaintiff and/or any witness and/or potential witness for participation in any form in this litigation;

    d. All compensatory damages that Plaintiff has sustained as a result

of the Defendant's unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that she would have received but for the Defendant's conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

      e.      Punitive damages where available by law;

      f.      Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

      g.      Pre-judgment and post-judgment interest, as provided by law; and

      h.      Any other and further relief as this Court finds just, necessary and proper.

**COUNT THREE**
***(DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE
NEW JERSEY LAW AGAINST DISCRIMINATION)***

64.    Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

65.    At all times relevant, Plaintiff was a person with a disability and/or was regarded as having a disability as defined by the NJLAD and therefore a member of a protected class.

66.    Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held at Defendant.

67.    As set forth herein and above, Plaintiff requested a reasonable accommodation in

the form of a medical leave mandated by her treating physician.

68. Upon information and belief, Plaintiff's requested accommodation was reasonable and would not have caused Defendant any undue burden or harm.

69. As set forth herein and above, Defendant denied Plaintiff's request for a reasonable accommodation for her disability and failed to engage in any discussion or interactive process to determine an appropriate disability accommodation for Plaintiff.

70. Instead, in response to Plaintiff's request for disability accommodations in the form of a medical leave, Defendant terminated Plaintiff's employment.

71. By reason of Defendant's violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

72. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

73. Accordingly, Defendant discriminated against Plaintiff on the basis of her disability and failed to accommodate Plaintiff's disability in violation of her statutory rights as guaranteed by the NJLAD.

74. Wherefore, Plaintiff demands judgment against Defendant as follows:

    a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned New Jersey State laws;

    b. Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

  c. An order restraining Defendant from any retaliation against Plaintiff and/or any witness and/or potential witness for participation in any form in this litigation;

  d. All compensatory damages that Plaintiff has sustained as a result of the Defendant's unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that she would have received but for the Defendant's conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

  e. Punitive damages where available by law;

  f. Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

  g. Pre-judgment and post-judgment interest, as provided by law; and

  h. Any other and further relief as this Court finds just, necessary and proper.

### COUNT FOUR
### *(DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE AMERICANS WITH DISABILITIES ACT)*

75. Plaintiff repeats and re-alleges each and every allegation above as if fully set forth herein.

76. At all times relevant, Plaintiff was a person with a disability and/or was regarded

as having a disability as defined by the ADA and therefore a member of a protected class.

77. Plaintiff was qualified to work as an employee for Defendant and she satisfactorily performed the duties required by the position she held at Defendant.

78. As set forth herein and above, Plaintiff requested a reasonable accommodation in the form of a medical leave mandated by her treating physician.

79. Upon information and belief, Plaintiff's requested accommodation was reasonable and would not have caused Defendant any undue burden or harm.

80. As set forth herein and above, Defendant denied Plaintiff's request for a reasonable accommodation for her disability and failed to engage in any discussion or interactive process to determine an appropriate disability accommodation for Plaintiff.

81. Instead, in response to Plaintiff's request for disability accommodations in the form of a medical leave, Defendant terminated Plaintiff's employment.

82. By reason of Defendant's violations of Plaintiff's statutory rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

83. As a direct and proximate result of Defendant's unlawful employment practices, Plaintiff has suffered extreme mental anguish and emotional distress.

84. Accordingly, Defendant discriminated against Plaintiff on the basis of her disability and failed to accommodate Plaintiff's disability in violation of her statutory rights as guaranteed by the ADA.

85. Wherefore, Plaintiff demands judgment against Defendant as follows:

    a. A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned New Jersey State laws;

      b.      Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

      c.      An order restraining Defendant from any retaliation against Plaintiff and/or any witness and/or potential witness for participation in any form in this litigation;

      d.      All compensatory damages that Plaintiff has sustained as a result of the Defendant's unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost compensation and employee benefits that she would have received but for the Defendant's conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

      e.      Punitive damages where available by law;

      f.      Awarding Plaintiff her costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

      g.      Pre-judgment and post-judgment interest, as provided by law; and

      h.      Any other and further relief as this Court finds just, necessary and proper.

## JURY DEMAND

Pursuant to R. 1:8-2(b), Plaintiff hereby demands a Trial by Jury on all of the issues raised in the within the Pleadings.

**Dated: April 13, 2021**

                                                **Respectfully submitted,**

                                                */s/ Diana R. Warshow*
                                                Diana R. Warshow, Esq. (021582008)
                                                Andrew T. Miltenberg, Esq. (*pro hac vice pending)*
                                                Gabrielle M. Vinci, Esq. (*pro hac vice pending*)
                                                NESENOFF & MILTENBERG, LLP
                                                363 Seventh Avenue, Fifth Floor
                                                New York, New York 10001
                                                Telephone: (212) 736-4500

                                                **ATTORNEYS FOR PLAINTIFF**